(226 P.3d 558)
No. 102,460

CYNTHIA SPEER, Natural Mother of Joseph A. Gordon, a/k/a Joseph A. Speer, *Appellee*, v. FARM BUREAU MUTUAL INSURANCE COMPANY, INC., *Appellant*.

Opinion filed March 26, 2010.

*Wendel W. Wurst*, of Calihan, Brown, Burgardt, Wurst & Daniel, P.A., of Garden City, for appellant.

*Thomas J. Berscheidt*, of Great Bend, for appellee.

Before STANDRIDGE, P.J., PIERRON, J., and BUKATY, S.J.

BUKATY, J.: Joseph A. Gordon, a/k/a Joseph A. Speer, the minor son of Cynthia Speer, lost his life in a tragic vehicle accident while riding on a school bus. The accident was solely caused by the negligence of the school bus driver who at the time of the accident

was an employee of a school district. Several other children also suffered injuries giving rise to multiple claims against the school district and the bus driver. The Kansas Tort Claims Act, K.S.A. 75-6101 *et seq.* (KTCA), limited the liability of the district and its driver to a total of $500,000 for all claims arising from the accident. The total claims far exceeded that amount. A judgment in another lawsuit, not a part of this appeal, determined how much each claimant would receive from the $500,000 available from the school district and its insurance company. Speer received a judgment in that case against the school district and its driver for her son's death in the amount of $84,500, which has been paid. Her total damages exceeded that amount. Apparently, the damages sustained by the other injured parties also exceeded the judgments awarded.

Speer and her husband, Chad Speer, had purchased a standard policy of automobile insurance on their personal vehicle from Farm Bureau Mutual Insurance Company, Inc. (Farm Bureau). That policy provided them statutorily mandated coverage for damages caused by an underinsured motorist. Speer filed suit in the district court against Farm Bureau to recover the portion of her damages arising from the accidental death of her son that exceeded the $84,500 she received from the funds available from the school district and its insurer. The district court found in her favor and awarded judgment to her in the amount of $85,229.06.

Farm Bureau appeals, arguing that Speer's auto policy only provides underinsured benefits for damages she is legally entitled to recover from the tortfeasors (the school bus driver and the school district) and Speer already received that amount when her judgment against the district and its driver was satisfied. We conclude that the judgment was capped by the KTCA and that cap does not limit the amount of damages an insured may recover from his or her own policy under the underinsured motorist provisions of the insured's policy. We affirm.

On October 15, 2003, a school bus owned by the school district, U.S.D. No. 482, and driven by Allen Thornburg was in an accident with a semi-tractor trailer that resulted in the death of 6-year-old Joseph. Several other children were injured in the accident. The families of the injured and deceased incurred approximately

$420,000 in medical and funeral expenses. Future medical expenses were estimated to ·be approximately $100,000. These amounts apparently did not include any noneconomic damages.

U.S.D. No. 482 had in place a motor vehicle liability insurance policy issued by State Farm Mutual Automobile Insurance Company (State Farm) that covered the school bus and any U.S.D. No. 482 employee driving the bus. The policy contained liability limits of $100,000 per person and $300,000 per accident.

At the time of the accident, Speer and her husband were covered by a motor vehicle liability insurance policy they had purchased on their personal automobile from Farm Bureau, which included a combined single liability and an underinsured motorist coverage limit of $500,000.

Several months after the accident, State Farm filed an interpleader action in the district court seeking to pay into the court the amount of its coverage that was to then be apportioned to the claimants who had incurred damages in the accident. The petition included as defendants Joseph, through his mother and natural guardian, Speer, and the other children injured, by and through their parents. Those defendants then, as third-party plaintiffs, filed third-party petitions against U.S.D. No. 482, Thornburg, and Moden Farms, Inc., the owner of the semi-tractor trailer involved in the accident with the school bus, claiming judgment against them as third-party defendants.

The parties stipulated that under the KTCA, U.S.D. No. 482's and its employee's liability was limited to $500,000 for all claims arising out of the accident. Specifically, K.S.A. 75-6105(a) and (b) provide:

"(a) Subject to the provisions of K.S.A. 75-6111 and amendments thereto, the liability for claims within the scope of this act shall not exceed $500,000 for any number of claims arising out of a single occurrence or accident.

"(b) When the amount awarded to or settled upon multiple claimants exceeds the limitations of this section, any party may apply to the district court which has jurisdiction of the cause to apportion to each claimant the proper share of the total amount limited herein. The share apportioned to each claimant shall be in the proportion that the ratio of the award or settlement made to the claimant bears to the aggregate awards and settlements for all claims arising out of the occurrence or accident."

The parties then reached a compromise settlement which called for the third-party plaintiffs to receive a total of $500,000 from U.S.D. No. 482, its driver, and its insurance company. Of particular relevance to the present case is that Joseph's family would receive $84,500 from that total of $500,000. Then of that amount, State Farm would pay $15,500 and U.S.D. No. 482 would pay $69,000. The district court entered judgment accordingly against U.S.D. No. 482 and Thornburg. That judgment was then satisfied.

Also, in addition to the money she received from this judgment, Speer received funeral and medical expense benefits under the personal injury protection (PIP) portion of the family's auto policy from Farm Bureau in the amount of $5,270.94.

Speer then filed the present case against Farm Bureau seeking judgment for the amount of her damages that exceeded those paid by U.S.D. No. 482, its driver, and State Farm. She argued essentially that those parties were underinsured and that entitled her to benefits provided in her own policy for damages caused by an underinsured motorist.

The parties stipulated to the essential facts. Based upon those stipulations, the district court found that the school bus driver, Thornburg, was 100% liable for the accident. In addition, the court found that Speer suffered economic damages of $5,027.94 and noneconomic damages of $169,729.06 for a total of $175,000 in damages. The district court set off the amounts of $5,270.94 and $84,500 as amounts previously paid to Speer from the PIP benefits and from her portion of proceeds from the interpleader action. The court then awarded Speer judgment for $85,229.06 against Farm Bureau, representing the amount of damages she had incurred but not recovered from the tortfeasors and their insurers.

Farm Bureau argues on appeal, as it did in the district court, that it has no liability arising from this accident for underinsured motorist coverage under its policy with Speer. Specifically, Farm Bureau argues as follows: that it provides coverage only for the amount Speer was legally entitled to recover from U.S.D. No. 482 and its driver; that the amount was capped under K.S.A. 75-6101 *et seq.*, resulting in the judgment of $84,500 Speer received in the

interpleader case; and that she received satisfaction on that judgment from U.S.D. No. 482 and State Farm.

The essential facts are not in dispute, and resolution of the issues in this case requires an interpretation of both statutory and contractual language and then application of that language to those facts. "Interpretation of a statute is a question of law over which [an appellate] court has unlimited review." *Double M Constr. v. Kansas Corporation Comm'n*, 288 Kan. 268, 271, 202 P.3d 7 (2009). Appellate review of the district court's construction of a contract on uncontested facts is de novo. *Liggatt v. Employers Mut. Casualty Co.*, 273 Kan. 915, 920, 46 P.3d 1120 (2002).

K.S.A. 40-284(b) provides:

"(b) Any uninsured motorist coverage shall include an underinsured motorist provision which enables the insured or the insured's legal representative to recover from the insurer the amount of damages for bodily injury or death to which the insured is legally entitled from the owner or operator of another motor vehicle with coverage limits equal to the limits of liability provided by such uninsured motorist coverage to the extent such coverage exceeds the limits of the bodily injury coverage carried by the owner or operator of the other motor vehicle"

The language in the insurance contract between the parties that is applicable to the issue here provides:

"We will pay damages which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or an **underinsured motor vehicle** because of **bodily injury**;

(1) Sustained by an insured person; and

(2) Caused by an accident.

". . . **We** will pay damages under this coverage caused by an accident with an **underinsured motor vehicle**, only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements."

We first note that Farm Bureau has provided no cases from Kansas or any other jurisdiction on point with the facts here that supports its position.

We next note that the Kansas Supreme Court has previously construed the phrase "legally entitled to recover as damages" in a broad manner. In *Winner v. Ratzlaff*, 211 Kan. 59, 64, 505 P.2d 606 (1973), the court defined the phrase to mean simply that "the insured must be able to establish fault on the part of the uninsured

motorist which gives rise to the damages and to prove the extent of those damages." Although the case involved uninsured motorist coverage, the same definition can be applied to the underinsured motorist coverage involved in the present case since the two are so closely related and are often used in the same section of insurance contracts. Even though the case did not specifically deal with the interplay between underinsured motorist coverage and a statutory cap on damages, its broad construction of language pertinent to the issues in this case is significant.

Although Kansas has not specifically dealt with the issue of whether a statutory cap, such as the one contained in K.S.A. 75-6105(a) and (b), exonerates an insurance company from paying the insured's excess damages under the underinsured motorist coverage in its insurance contract, several other states have dealt with and discussed the issue with favorable outcomes to the insured.

In *Cincinnati Ins. Co. v. Trosky*, 918 N.E.2d 1, 9 (Ind. App. 2009), the Indiana Court of Appeals determined that "the sovereign immunity defense is not available to [underinsured motorist] carriers who argue that once the statutory cap has been paid by the governmental unit, the insured is no longer legally 'entitled to recover.' " The court goes on to say, as Kansas has, that the phrase " 'legally entitled to recover' " merely means that the insured must establish fault on the part of the underinsured motorist and establishes the amount of the insured's damages. 918 N.E.2d at 9. We also find persuasive the public policy reasons stated by the court for its decision:

"Statutory tort claims caps serve to limit the financial exposure of a state's treasury for torts committed by state officials and employees. [Citation omitted.] Insureds pay premiums to their insurers to make up the difference between an injured insured's damages and the tortfeasor's liability coverage up to the limit of the insured's [underinsured motorist] coverage. [Citation omitted.]" 918 N.E.2d at 8-9.

In *Karlson v. City of Oklahoma City*, 711 P.2d 72, 75 (Okla. 1985), the Oklahoma Supreme Court determined that although a tortfeasor's liability is limited by the Oklahoma Political Subdivisions Tort Claims Act such that it does not compensate an insured for all of the proven damages suffered in an automobile accident,

the insured is allowed to recover from the insured's insurance company through the underinsured motorist provision as provided by the insured's automobile liability insurance policy.

In *West American v. Popa*, 352 Md. 455, 472-73, 478, 723 A.2d 1 (1998), the Maryland Court of Appeals determined that the governmental immunity of a tortfeasor did not prevent an insured from applying for and recovering the insured's damages from the underinsured motorist carrier.

Here, K.S.A. 75-6105 statutorily caps U.S.D. No. 482's and its driver's liability at $500,000 for all claims. U.S.D. No. 482, its insurance carrier, State Farm, and the bus driver had judgment entered against them for that statutory maximum in favor of the victims of the accident of October 15, 2003. Of this amount, Speer received $84,500 for the death of her son. This amount did not cover all of the damages Speer incurred as a result of the accident. We conclude that, in light of our Supreme Court's broad construction of "legally entitled to recover as damages" and the persuasive case law cited above, the statutory cap of K.S.A. 75-6105 has no effect on Farm Bureau's underinsured motorist coverage. As a result, since Speer did prove she is legally entitled to recover damages exceeding the amount recovered against the tortfeasors, the district court did not err in granting judgment to Speer against Farm Bureau for those damages as benefits under the uninsured motorist provisions of her policy.

Affirmed.